agency, 181575. May it please the Court, I'll call Robert Proce, the appellant. This case revolves around four CIA-classified 1985 documents. Those documents were part of a mosaic of other documents that I've been seeking in a series of four years, going all the way back to 1983. This document, the IMC document, which is the critical document of all of them, goes to the heart of the issue of whether IMC stands for International Medical Center, Inc. If it stands for International Medical Center, Inc., then the almost incredible argument that was made to judge the district court below, in 550 pages, which were not considered when she rendered her decision, that this was a CIA Executive Order 1233 domestic covert operation. If that's true, everything that flows from it, that happened below, and in the other cases that I've taken, many of them coming before this Court, have to be looked at with a lens which I think is found in the recent Supreme Court decision by Chief Justice Roberts, the Department of Commerce v. New York, which I think is the controlling case for today. And there, Chief Justice Roberts said, if there are contrived facts and contrived law, the act of doing the review by an Article III judge can't be performed. And if I can quote him exactly, and this is the whole thing that I think applies here, accepting contrived reasons would defeat the purpose of the enterprise. If judicial review is to be more than empty ritual, it must demand something better than the explanations offered for the action taken in this case. I then go to this Court's decision on May 30th in ACLU v. NSA, CIA, DOD, and DOJ, in which this Court took a rather bold decision that an Office of Legal Counsel opinion is protected by attorney-client privilege in a FOIA. And that OLC opinion was a very important one regarding warrantless surveillance of U.S. citizens, and it's the Stellar Wind Program, May 24th, May 6th, 2004, of Office of Legal Counsel, Assistant Attorney General Smith. In that case, this case of this Court raised the issue of the importance of attorneys working for the government to be free to give sound legal advice to their clients. Their clients include the Department of Justice, the CIA, the NSA, the Department of Defense, and the quote I'm using from this Court, which I think is also applicable in this case, leading to a remand, the public interest in ensuring that government officials receive sound legal advice is at its apex when the programs about which advice is sought are secret and unlikely to be subject to litigation. And that goes to the crux of what's happened in this case and in the other FOIA cases I've taken, many of which became before this Court. And in this case, the U.S. government's attorneys from the Eastern District do not have clearance to read the CIA-classified documents. However, the CIA General Counsel, Courtney Elwood, and the Assistant Attorney General for the Civil Division, Mr. Hunt, have clearance to read the classified documents. What happens, and down below, with the Court below, the Eastern District of New York attorneys, and now this case started in 2000, made presentations to the Court without knowing what are in the CIA-classified documents. Meanwhile, I'm writing document after document, 550 pages, voluminous, which Judge Elwood, in order to render her decisions, but at the same time when the summary judgment motions were made, my motion and the government's motion, didn't consider the 550 pages. Now, in those 550 pages, what was presented was the fact that there were, and I was nice, I was saying, fake facts, fake facts by the government necessary for them to protect CIA domestic covert operations, which gets us back to the IMC document. Mr. Robert, you've reserved a minute for rebuttal. Yes, I did. So we'll hear from the government. Good morning. I'm Brownie Nelson, Assistant U.S. Attorney from the Eastern District of New York. This case is about two requests made by Mr. Robert in 2000 to the DOJ and to the CIA. The district court correctly granted summary judgment based on the declarations and exhibits submitted by the government in support of his motion for summary judgment. Mr. Robert has failed to present any argument in his briefs on appeal on the court today as to why the grant of summary judgment should be vacated. Unless the court has questions, the government will rest on its brief. Well, I do have one question. Mr. Robert began his argument by saying this case is about four documents. And I take it the government's position is that it's not, that this case is actually about a much broader request that was made and that that request was properly denied? Is that the crux of, or a crux of the argument? I will just say it's a crux. A crux. A mini crux. The, the, the, the, Mr. Robert made a request in September 2000 to the CIA. And then he also made a request of which he doesn't have a copy to the DOJ. In, in its initial motion practice, the government was unable to locate a copy of the request. And, but the CIA had subsequent requests from Mr. Robert that started in 2010, which were beyond the scope of this case, which was filed in 2002. So I think that's, and the district court specifically says in her decision that those other requests that were made in 2010 and later to the CIA, which are contained in our supplemental appendix, are beyond the scope of this case, which was filed in 2002. And even though Mr. Robert amended his complaint, he amended it in 2003. And she denied his claims with respect to the subsequent request without prejudice, but did advise him that if he were to bring an action about those requests or any other requests, he would be, he would have to do it in, in accordance with Mr., with Judge Garifuss's filing injunction. Why did it take so long to get all this done? Well, there are a variety of reasons. The case was filed in December 2002 and then there was an amended complaint in 2003. During that time, Mr. Robert had several other cases in the Eastern District, several other FOIA cases. And Your attorney's office had other cases in the district then, too. But, I mean, it seems like there's a 10-year hiatus of little real activity from the court. Actually, on the docket sheet, it does, there wasn't any hiatus. There were, Mr. Robert was reporting to the court about his other cases. There were requests that Mr. Robert identify his other cases. There was a report and recommendation that the case be stayed pending his furnishing of that information. There was a, basically an administrative closure with the opportunity for reinstatement. So the docket sheet does reflect that docket entries and activity, but certainly there was no, and there was also an appeal pending in this court, and Mr. Robert was suggesting that if that appeal went one way or the other, that it would affect this litigation. So there was, there were a variety of reasons. And eventually in 2014, I believe, Mr. Robert did seek to reinstate his case. Thank you very much. Thank you. Mr. Robert. There was a very good reason why it's taken so long. The court below very graciously allowed me to proceed in other cases I had pending. And the key case was Robert 7 v. Department of Justice, which sought the Foreign Intelligence Surveillance Court documents upon which I became the target of a criminal investigation and wiretapping. And I took that case up the courts, and it was assigned to Judge Garifas. That's how we get into this injunction. Came to the Second Circuit, and I lost. And then we went up to the Supreme Court, petition denied. And I took another case, and the court below allowed me to take the other case, although they were going simultaneously. Robert 8 v. DOJ, HHS, and SSA. And that case, too, was Judge Garifas. Went to the Second Circuit. Lost. Petitioned British certiorari. Now, those cases sought documents which would corroborate the documents being sought here, which I sought in 2000. And contrary to what the government keeps saying, the CIA agency release panel specifically said, denied me in 2002, and I got a quote, this agency has identified no records responsive to your request. Now, when you do this litigation in FOIA, when the CIA says no documents, CIA agency release panel, so I'm at the highest level. There's no responsive documents. That's code for we're not going to tell you anything, because if we tell you something, we're going to tell you something. And specifically, on December 2, 2002, CIA agency release panel Vice Chairman Brick says specifically, you have the right to seek judicial review of this determination of the United States District Court, which I proceeded to take. Thank you very much.